703 S.E.2d 629 (2010)
SMITH
v.
The STATE (Two Cases).
Nos. S10A1281, S10A1282.
Supreme Court of Georgia.
November 8, 2010.
Reconsideration denied December 14, 2010.
*632 Edwin J. Wilson, Augusta, for appellant in Case No. S10A1281.
Samuel J. Harris, for appellant in Case No. S10A1282.
Patrick H. Head, District Attorney, John R. Edwards, Eleanor A. Dixon, Asst. Dist. Attys., Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Assistant Attorney General, for appellee.
MELTON, Justice.
Following a jury trial in these consolidated cases, Sonya and Joseph Smith were found guilty of felony murder, involuntary manslaughter, cruelty to children, aggravated assault, false imprisonment, and reckless conduct based on the couple's treatment of their eight-year-old son, Josef, which led to the child's death.[1] In Case No. S10A1281, Sonya *633 Smith claims, among other things, that the trial court erred in allowing the prosecutor to make an improper closing argument, and that her trial counsel was ineffective. In Case No. S10A1282, Joseph Smith claims that the evidence was insufficient to sustain his convictions; that his trial counsel was ineffective; and that the trial court erred by failing to merge his conviction for felony murder into his involuntary manslaughter conviction. For the reasons that follow, we affirm in both cases.
Viewed in the light most favorable to the jury's verdict, the record reveals that Joseph and Sonya Smith routinely disciplined their son, Josef, by beating him with glue sticks, belts, and heated coat hangers; locking him in confined spaces for extended periods of time; and tying his hands with rope. During the day on October 8, 2003, Joseph disciplined Josef several times, striking him repeatedly with a foot long glue stick. At one point, Josef began complaining of severe stomach pains and had urine that was brownish in color. Later, while Joseph was taking a shower, Sonya Smith beat Josef with a glue stick, drawing blood through Josef's clothing. Sonya and the Smiths' eldest son, Mykel Booth, then forced Josef into a wooden box, beating him about the head as they did so. Sonya and Mykel then tied the box shut with a cord. When Joseph later came out of the shower and removed Josef from the box, the child was barely breathing. Emergency services personnel were called to the Smiths' residence with an unresponsive child complaint, and Josef was taken to the hospital, where he later died. Numerous medical experts examined the extensive bruising throughout Josef's body and to Josef's head, and testified that the cause of Josef's death was either blunt force trauma or asphyxiation.

Case No. S10A1281
1. The evidence outlined above was sufficient to enable a rational trier of fact to find Sonya Smith guilty of all the crimes for which she was convicted. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
2. Sonya contends that the trial court erred in allowing the prosecutor to dim the lights in the courtroom, bring out a cake with lit candles, and sing "Happy Birthday" to the deceased victim during her closing argument. However, Sonya failed to object to this argument by the prosecutor, and has therefore waived review of this issue on appeal. Mullins v. State, 270 Ga. 450, 451(2), 511 S.E.2d 165 (1999) (in case where death penalty is not imposed, "it [is] incumbent upon [the defendant] to raise an objection to the State's argument below in order to preserve the right to contest the propriety thereof in a subsequent appeal"). See also Paul v. State, 272 Ga. 845, 848(3), 537 S.E.2d 58 (2000) ("Plain error" rule applies only "to death penalty cases, and other criminal cases in which the trial court violates OCGA § 17-8-57 [judge expressing or intimating opinion as to what has or has not been proved or as to the guilt of the accused]").
3. Sonya argues that the trial court erred in denying her motion for a mistrial after her son, Mykel, testified that the Smiths prayed that they had not "los[t] another son" after they pulled an unresponsive Josef from the box in which he had been placed. Instead of granting a mistrial, the trial court gave a comprehensive curative instruction, informing the jury that they had to disregard the testimony and could not consider it "in any way, in any form, [or] in any fashion."
"When a prejudicial matter is improperly placed before the jury, a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial." (Citation omitted.) White v. State, 268 Ga. *634 28, 32(4), 486 S.E.2d 338 (1997). It is within the discretion of the trial court to decide "whether a mistrial must be granted as the only corrective measure or whether the prejudicial effect can be corrected by withdrawing the testimony from the consideration of the jury under proper instructions." Stanley v. State, 250 Ga. 3, 4(2), 295 S.E.2d 315 (1982). Here, the curative instruction given by the trial court adequately preserved Sonya's right to a fair trial. Accordingly, the trial court did not abuse its discretion in denying Sonya's motion for a mistrial. See Johns v. State, 274 Ga. 23, 25(3), 549 S.E.2d 68 (2001) (this Court "must presume that the jury followed [its] instruction and disregarded the [witness'] statement") (citations omitted).
4. Sonya contends that the trial court erred by denying her motion for a new trial because the jury's verdict finding her guilty of involuntary manslaughter as a lesser included offense of malice murder was "mutually exclusive" from the jury's verdict finding her guilty of felony murder.
Verdicts are mutually exclusive "where a guilty verdict on one count logically excludes a finding of guilt on the other.'" [Cits.] Thus, the rule against mutually exclusive verdicts applies to multiple guilty verdicts which cannot be logically reconciled; the rule is not implicated where ... verdicts of guilty and not guilty are returned. [Cit.]
Shepherd v. State, 280 Ga. 245, 248(1), 626 S.E.2d 96 (2006).
Here, the evidence authorized the jury to logically conclude that Sonya had committed several acts of abuse against her son, some of which may have been non-felony acts of abuse that inadvertently led to or contributed to her son's death (see OCGA § 16-5-3), and others that may have constituted felony cruelty to children, which would have served as the underlying basis for the felony murder conviction. See OCGA § 16-5-70(b) ("Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain"). The verdicts here were not mutually exclusive, and this enumeration lacks merit.
5. Sonya claims that the trial court erred by failing to properly advise her regarding her right to testify when her counsel announced that Sonya would not be testifying on her own behalf. However, in order to ensure that Sonya was making an informed decision about whether or not to testify, the trial court did thoroughly discuss with Sonya the pros and cons of her testifying on her own behalf after her counsel announced that she would not be testifying. Moreover, after the trial court engaged in this extensive discussion and asked Sonya's counsel whether anything had been left out of the discussion regarding Sonya's right to testify, Sonya's counsel replied, "I don't think you left anything out."[2] To the extent that Sonya now claims that the trial court should have said something more or something different, she has waived review of this issue by failing to object to the information that the trial court did in fact give to her. See, e.g., Bridges v. State, 279 Ga. 351(9), 613 S.E.2d 621 (2005).
6. Sonya argues that the trial court erred by overruling Joseph Smith's counsel's objection to the prosecutor asking a State's witness to rate the injuries suffered by the deceased in comparison to other cases that the witness had seen. However, because Sonya did not join in Joseph's objection at trial, or lodge an objection of her own, this issue is also waived on appeal. See Ashford v. State, 271 Ga. 148(2), 518 S.E.2d 420 (1999).
7. Sonya urges that the trial court erred in refusing to admit into evidence at the motion for new trial hearing a Court TV video recording of the prosecutor's closing argument. However, to the extent that Sonya wished to use the video to supplement the official trial transcript and shed additional light on the trial proceedings, she failed to follow the proper procedures to make the video part of the official court record. See *635 OCGA § 5-6-41(f) ("Where any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth"). Accordingly, we find no abuse of discretion in the trial court's decision to exclude the videotape.
8. Sonya claims that her trial counsel was ineffective because (a) counsel failed to have voir dire recorded, (b) counsel failed to object to the prosecutor asking a witness to compare the victim's injuries in this case to others that he had seen, (c) counsel failed to object to Joseph Smith's counsel asking a State's witness about the severity of the victim's injuries, (d) counsel failed to object to references at trial to a court ruling regarding the custody of the Smiths' remaining children, (e) counsel failed to make a record of his agreement with the prosecutor stating that evidence of the Smiths' other deceased child would not be admitted at trial, (f) counsel failed to effectively cross-examine several State's witnesses, (g) counsel failed to make a closing argument, (h) counsel failed to object to the prosecutor's "Happy Birthday" song during closing argument, (i) counsel failed to present good character evidence at trial, and (j) counsel failed in his overall performance at trial, as evidenced by the cumulative effects of errors (a)-(i) outlined above.
In order to succeed on her claim of ineffective assistance, Sonya must prove both that her trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697(IV), 104 S.Ct. 2052; Fuller v. State, 277 Ga. 505(3), 591 S.E.2d 782 (2004). In reviewing the trial court's decision, "`[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76, 586 S.E.2d 313 (2003).
(a) Contrary to Sonya's contentions, the failure to have voir dire recorded, by itself, does not amount to ineffective assistance. Williams v. State, 277 Ga. 853(6)(e), 596 S.E.2d 597 (2004).
(b), (c) Sonya has failed to show how her counsel's failure to object to testimony about the severity of the victim's injuries would have created a reasonable likelihood of a different result at trial. Indeed, there was overwhelming evidence of the extreme nature of the victim's injuries that resulted from beatings by Sonya, and counsel's failure to object to the testimony relating to the extent of the victim's injuries does not indicate that the outcome at trial would have been different if counsel had objected. See, e.g., Johnson v. State, 281 Ga. 770(2)(b), 642 S.E.2d 827 (2007).
(d) Sonya did not question her trial counsel about his failure to object to the testimony regarding the custody of the Smiths' other children. Accordingly, "there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[,] [and] [w]here[, as here,] trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome this presumption." (Citation and punctuation omitted.) Higginbotham v. State, 287 Ga. 187, 190-191(5)(a), 695 S.E.2d 210 (2010). We find that evidence supports the conclusion that Sonya failed to overcome the strong presumption that her counsel rendered effective assistance here. Counsel's choice not to object "may have been a strategic decision, and because [Sonya] did not question trial counsel concerning this decision, [Sonya] has failed to carry [her] burden to demonstrate that trial counsel provided deficient performance." (Footnote omitted.) Dyer v. State, 278 Ga. 656, 660(7), 604 S.E.2d 756 (2004).
(e) As explained in Division 3, supra, the trial court gave a proper curative instruction in response to Mykel's testimony that the Smiths had lost another child. Accordingly, *636 whether or not trial counsel made a sufficient record of his agreement with the prosecutor that no such testimony would be admitted at trial makes no difference. Pretermitting the question whether the failure to make a record of the agreement with the prosecutor would constitute deficient performance, there is no reasonable probability that the outcome of the trial was affected by the alleged failure to make such a record. See, e.g., Rivers v. State, 283 Ga. 1(3)(a), 655 S.E.2d 594 (2008).
(f) "Like the determination of which witnesses to call, the extent of cross-examination is a strategic and tactical decision within the exclusive province of the attorney after consultation with the client." (Citation omitted.) Fairclough v. State, 276 Ga. 602, 605(4), 581 S.E.2d 3 (2003). Here, counsel testified at the motion for new trial hearing that he conferred with Joseph Smith's counsel regarding cross-examination, and that he chose not to cross-examine certain witnesses whenever he was satisfied that Joseph's counsel had elicited the same information on cross-examination that he, himself, would have elicited. In light of this reasonable strategic choice, we find that evidence supports the trial court's conclusion that counsel rendered effective assistance. See, e.g., Smith v. State, 283 Ga. 237(2)(b), 657 S.E.2d 523 (2008).
(g) Counsel made a strategic decision not to make a closing argument. In counsel's professional judgment, one cohesive closing argument delivered by counsel for Joseph Smith would be more effective than presenting two closing arguments. "Inasmuch as th[is] decision . . . was not patently unreasonable, and because [Sonya] provides no basis for concluding that the result of [her] trial would have been different if [her counsel] had [presented an additional] closing argument, [she] has not shown that [her] trial counsel was ineffective in this regard." (Citation omitted.) McKenzie v. State, 284 Ga. 342, 347(4)(b), 667 S.E.2d 43 (2008).
(h) Counsel made a strategic decision not to object to the "Happy Birthday" song during the State's closing argument. Specifically, he preferred to remain silent during the argument rather than run the risk of offending anyone on the jury by giving the impression that he was simply trying to disrupt the prosecutor's argument. See Braithwaite v. State, 275 Ga. 884, 886(2)(b), 572 S.E.2d 612 (2002) (where attorney "reasonably cho[oses] silence [instead of objecting to improper closing argument], . . . we will not use hindsight to second-guess that decision on appeal"). As explained more fully in Division 10(b), infra, while this Court frowns upon the prosecutor's antics and finds them to be highly inappropriate, counsel's decision to remain silent was reasonable, considering the fact that the prosecutor's argument was so "preposterous" and "over the top" that it may have worked to the benefit of the defense even absent an objection. Indeed, it cannot be said that the jury may not have been alienated by the prosecutor's theatrical stunt during its closing argument, as the jury found Sonya not guilty on several of the charges against her, including two charges of felony murder, one of the first degree cruelty to children charges, and the malice murder charge.
(i) "Whether to introduce character evidence and potentially open the door for impeachment is clearly one of tactics and strategy." (Citation omitted.) Washington v. State, 276 Ga. 655, 659(3)(c), 581 S.E.2d 518 (2003). After discussing the issue with Sonya, counsel made a reasonable strategic decision not to introduce good character evidence, as he did not wish to open the door to potentially damaging questions on cross-examination regarding whether the opinions of the good character witnesses would have changed if they knew that someone had caused the death of a child. This claim of ineffective assistance is without merit. Id.
(j) "Because [Sonya] has not shown ineffective assistance of [her] trial counsel in any area of [her] trial, [her] claim that trial counsel's individual and cumulative errors deprived [her] of a fair trial is without merit." Franks v. State, 278 Ga. 246, 264(2)(B)(9), 599 S.E.2d 134 (2004).

Case No. S10A1282
9. The evidence outlined above was sufficient to enable a rational trier of *637 fact to find Joseph Smith guilty of all the crimes for which he was convicted. Jackson v. Virginia, supra; see also OCGA § 16-2-20 (parties to a crime). Indeed, regardless of whether the jury believed Mykel Booth's testimony that Joseph was in the shower at the time that Mykel and Sonya beat Josef and placed him in a wooden box, the evidence authorized the jury to conclude that Josef was already in distress from beatings that he had received from Joseph earlier in the day, and that, even if these beatings "did not directly cause the victim's death, the beating[s] either materially contributed to the death or materially accelerated it." Lawson v. State, 274 Ga. 866, 867(1), 561 S.E.2d 72 (2002). Moreover, Joseph admitted to police that confining Josef to enclosed spaces was a routine part of the family's discipline, which authorized the jury to conclude that Joseph was in fact directly involved in Josef's confinement to the box, or that he encouraged the use of the box that may have contributed to the child's death.
10. Joseph contends that trial counsel was ineffective because (a) trial counsel was acting under a conflict of interest, and (b) counsel failed to object to the prosecutor singing "Happy Birthday" during her closing argument. Both contentions are without merit.
(a) Joseph argues that trial counsel, Manny Arora, was acting under a conflict of interest because he represented both Sonya and Joseph, who had competing interests at trial; and because Arora's legal fees were being paid by a church to which Sonya and Joseph belonged. However, the record belies these claims. While Arora and the attorney who represented Sonya decided together to conduct a joint defense because neither Sonya nor Joseph wanted to blame the other for the victim's death, the fact remains that both Joseph and Sonya had their own, independent, attorneys. See Whatley v. Terry, 284 Ga. 555, 563(IV), 668 S.E.2d 651 (2008) (where attorney did not jointly represent codefendants, prejudice could not be presumed under specialized ineffective assistance Sixth Amendment conflict of interest case law where defendant could not show that "an actual conflict of interest adversely affected his trial counsel's performance"). Moreover, there is no evidence that the church that paid Arora's legal fees exercised any influence over Arora's independent judgment in representing Joseph. Because evidence supported the trial court's conclusion that Arora provided effective assistance in this regard, that conclusion will not be disturbed here. See id. at 563-564(IV), 668 S.E.2d 651.
(b) Arora testified at the motion for new trial hearing that he made a strategic decision not to object to the "Happy Birthday" song during closing argument. Specifically, Arora thought that the "Happy Birthday" song was so "preposterous," "absurd," and "over the top" that "it would turn the jurors off," and that he should not call any more attention to it by objecting to it. In this regard, we must remind all prosecutors in this State that it is not their job to pursue stunts and antics during their closing arguments that are designed merely to appeal to the prejudices of jurors, but
to see that justice is done and nothing more. That duty should not be forgotten in an excess of zeal or the eager quest for victory in [any given] case. The people of the state desire merely to ascertain beyond a reasonable doubt that the accused is guilty of the crime charged, and do not countenance any unfairness upon the part of their representatives in court.
(Citations and punctuation omitted.) Carr v. State, 267 Ga. 701, 712(10), 482 S.E.2d 314 (1997). Indeed, in order to ensure that the prosecutor did not let her "excess[ive] . . . zeal or the eager quest for victory in [this] case" lead her to forget her duty "to see that justice is done and nothing more" id., the trial court would have been well within its right to control the courtroom by putting an end to the display of the prosecutor, even absent an objection from defense counsel. See OCGA § 15-1-3(4) ("Every court has power . . . [t]o control, in the furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto").
In any event, because it was reasonable for Arora to pursue a strategy that would allow the potentially inappropriate antics of the *638 prosecutor to backfire against her, we find no merit to Joseph's claim that Arora provided ineffective assistance in this regard. See Braithwaite, supra, 275 Ga. at 885(2)(b), 572 S.E.2d 612. In this connection, it cannot be said that Arora was incorrect in his belief that the jurors may have been turned off by the closing argument, as the jury found Joseph not guilty on several of the charges against him, including two of the felony murder charges, one of the first degree cruelty to children charges, and the malice murder charge.
11. Joseph urges that the trial court erred by failing to merge his conviction for felony murder into his voluntary manslaughter conviction for sentencing purposes because the verdicts on those counts were mutually exclusive. However, for the same reasons stated in Division 4, supra, relating to Sonya Smith, the verdicts relating to Joseph Smith also were not mutually exclusive. Indeed, the evidence authorized the jury to conclude that some of the acts taken by Joseph were non-felony acts of abuse that stemmed from criminal negligence, whereas others amounted to felony cruelty to children. This contention is without merit.
Judgments affirmed.
All the Justices concur, except HUNSTEIN, C.J., and BENHAM, J., who dissent.
HUNSTEIN, Chief Justice, dissenting.
I write because I disagree with the majority that, absent objection, this Court cannot review an error affecting the fairness, integrity and public reputation of judicial proceedings caused by a trial court's violation of its duty to maintain order and decorum in the courtroom. Even without application of the plain error rule here, I disagree with the majority that defense counsel's failure to object was based on reasonable strategy and that no prejudice has been shown as a result of the assistant district attorney's theatrical stunt. For these and other reasons set forth below, I respectfully dissent.
1. The majority, while stating that the trial court "would have been well within its right to control the courtroom by putting an end to the outrageous display of the prosecutor, even absent an objection from defense counsel, [cit.]" (emphasis supplied) Maj. Op., p. 637, refuses to address any error from the trial court's failure to act, although that error was directly raised on appeal. See id. at p. 633 (trial court's error in not stopping prosecutor's birthday cake stunt waived for failure to object). What the majority fails to recognize, however, is that trial judges have not only the right to control their courtrooms: they have the duty to do so. R. W. Page Corp. v. Lumpkin, 249 Ga. 576, 581(9), 292 S.E.2d 815 (1982) (setting forth the "obligation of the trial court to maintain dignity and decorum in the courtroom" (emphasis supplied)). See also Canon 3(B)(3) of the Code of Judicial Conduct ("[j]udges shall require order and decorum in proceedings over which they preside"). In response to actions taken by the prosecutor that were so "outrageous" that the fairness, integrity and public reputation of this criminal proceeding clearly was adversely affected, I would hold under the exceptional circumstances present in this case that the absence of objection does not prevent this Court from reviewing the error caused by the trial court's breach of its duty to maintain decorum in the courtroom.
Paul v. State, 272 Ga. 845(3), 537 S.E.2d 58 (2000) completely supports, if not demands, that we review this error even without objection by counsel at the trial court level. Although the majority cites Paul for the proposition that our review of plain error is limited to death penalty cases and the violation of OCGA § 17-8-57, this misreads what we held in Paul, in which we applied and quoted with approval the Court of Appeals' opinion in Almond v. State, 180 Ga.App. 475, 480, 349 S.E.2d 482 (1986). In the portion of the Almond opinion on motion for rehearing, the Court of Appeals held:
The United States Supreme Court has stated the general rule many times: "`In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." *639 United States v. Atkinson, 297 U.S. 157, 160 [56 S.Ct. 391, 80 L.Ed. 555]." Silber v. United States, 370 U.S. 717, 718, 82 S.Ct. 1287, 8 L.Ed.2d 798; accord [cits.].
Id. at 480, 349 S.E.2d 482. Finding "the facts of the case at the bar to be exceptional and to seriously affect the fairness, integrity, and public reputation of these judicial proceedings," id., the Court of Appeals addressed the error asserted on appeal even though no objection had been made in the trial court. See also Putnam v. State, 231 Ga.App. 190(3), 498 S.E.2d 340 (1998) (same); Kearney v. State, 184 Ga.App. 64, 66, 360 S.E.2d 633 (1987) (same). Of particular importance is the fact that Almond involved neither death penalty issues nor any violation of OCGA § 17-8-57. It is thus inappropriate to interpret Paul as limiting plain error to those situations. Rather, Paul must be read as this Court's decision to adopt the plain error rule of Silber and Atkinson, supra, when we concluded that "the plain error rule should be applied to cases of [the] kind" addressed in Almond and then applied it to hold that the trial court's error so "`seriously affected the fairness, integrity, and public reputation of these judicial proceedings,'" quoting Almond, in order to hold that trial counsel's failure to object did not preclude review of the issue on appeal. Paul v. State, supra, 272 Ga. at 848-849(3), 537 S.E.2d 58. Accord Wright v. State, 274 Ga. 730(3), 559 S.E.2d 437 (2002) (declining to review under the plain error rule the admission of certain hearsay statements not objected to at trial because defendant failed to demonstrate how the statements' admission seriously affected the fairness, integrity and public reputation of the trial).
The record in this case establishes[3] that the prosecutor, in the final moments of her concluding argument on behalf of the State, "clicked" her fingers at which signal one of the deputies in the courtroom turned out the lights[4] and an associate prosecutor "popped out a cake out of a grocery bag" complete with eight candles, which were then lit with a lighter brought into the courtroom; the prosecutor and her associate then proceeded to sing to "dear Josef," i.e., the deceased victim, the celebratory words to "Happy Birthday."
There was no legitimate reason for what the prosecutor did. It was neither argument nor rebuttal, because there is nothing at all in the record about birthdays and birthday cakes to raise even the slightest possibility that the prosecutor was drawing a reasonable inference from the evidence presented or the arguments made by defense counsel. To the contrary, the evidence established that the victim's family followed an austere lifestyle, including dietary restrictions, that eliminated the possibility of the victim experiencing the type of birthday event dramatized by the prosecutor.[5] The prosecutor's birthday production was not meant to be argument or rebuttal: it was a theatrical stunt spun out of pure fantasy. Its sole purpose was to prejudice the rights of appellants before the jury in an impermissible attempt to invoke the jury's passions and divert the jury from the evidence.[6] It offended *640 the dignity and decorum of the court and violated every precept of professionalism and fair play. Yet the trial court did absolutely nothing. The event played itself out without the trial judge performing his duty to maintain decorum in the courtroom. Moreover, after observing this "`preposterous'" performance, the trial court took no steps of any kind to minimize the prejudice. There was no rebuke to counsel; there was no direction to the jury to ignore the spectacle they had just witnessed; there was no charge to the jury that sympathy for the victim was to play no role in their verdict. See Division 3 infra.
The record is clear that the trial judge violated his duty to maintain order and decorum in his courtroom. Although he told the jurors in his pre-trial instructions that he was "going to make sure that the decorum of the courtthat the decorum of the courtroom stays intact," he took no action to stop an out-of-control prosecutor from turning his courtroom into a theater stage for her unprofessional behavior, which could only have left the jury with the impression that what she did was perfectly acceptable. It is beyond question in this exceptional circumstance that the trial judge's failure to maintain the decorum of his courtroom was an error that seriously affected the fairness, integrity and public reputation of these criminal proceedings, such that "the plain error rule should be applied" to this case, Paul v. State, supra, 272 Ga. at 848(3), 537 S.E.2d 58, and these convictions reversed.
2. Even treating this issue as arising solely under a claim of ineffective assistance of counsel, I cannot agree with the majority that the defense counsel's failure to object was based on a reasonable strategy and thus did not constitute deficient performance.
First, I disagree with the conclusion drawn by the majority that counsel's decision to remain silent here could qualify as reasonable due to counsel's wish to avoid "run[ning] the risk of offending anyone on the jury." Maj. Op., p. 636. A reasonable attorney does not stand by silently and allow the prosecutor to figuratively toss the victim into the jury box, with the resulting prejudice to counsel's clients, out of concern that an objection essential to protecting the impartiality of the jury might "give the impression" that he was "disruptive." No reasonable attorney would sacrifice a client's fundamental right to a fair trial for such a ridiculous reason. Nor was counsel's concern legally sustainable here where the trial court in its opening charge expressly instructed the jurors that "you should not be prejudice[d] in any way against a lawyer who makes objections for the party he or she represents." See Smith v. State, 267 Ga. 372, 374(3), 477 S.E.2d 827 (1996) ("[q]ualified jurors under oath are presumed to follow the trial court's instructions").
I also disagree with the majority's finding that defense counsel was not ineffective on the basis that defense counsel pursued a "reasonable" strategy by gambling that the prosecutor's stunt would "backfire" on the prosecution. Maj. Op., pp. 636 and 637. The majority even approves this strategy: "[i]ndeed, it cannot be said that the jury may not have been alienated by the prosecutor's theatrical stunt during its closing argument." (Emphasis supplied.) Id. at p. 636. The prosecutor's stunt was intended to evoke sympathy for the victim so that the jury, diverted from the facts, would return a verdict based on passion, not the evidence and the law. How is it "reasonable" strategy for defense counsel to use the prosecutor's improper stunt to elicit the opposite but equally improper effect in the jury? It is just as inappropriate for a jury to return a verdict based on prejudice or bias against the State as it is for the jury to return a verdict against the defense based on sympathy for the victim. A jury's verdict must be based on the facts and the law, not passion or prejudice. Jackson v. State, 278 Ga. 235(5)(a), 599 S.E.2d 129 (2004). I cannot agree with the majority's holding that the strategy pursued by defense counsel was reasonable when that strategy is directly contrary to Georgia law. I would instead find *641 that defense counsel performed deficiently by failing to object to the prosecutor's theatrical performance.
3. Turning to the second prong of the Strickland v. Washington test, I disagree with the majority that appellants failed to establish prejudice from the birthday cake stunt. First, I disagree with the majority that the jury's verdict can be interpreted in any manner as demonstrating a lack of prejudice. The Counts 3 and 4 felony murder charges on which the jury found appellants not guilty were predicated on the exact same allegations that served as the bases for the Count 2 felony murder/cruelty to children charge, as to which the jury found appellants guilty. It is notable that the jury chose to return its guilty verdict on the felony murder charge predicated on cruelty to children, i.e., the one felony most likely to be influenced by the State's improper invocation of sympathy for the victim, as also reflected by guilty verdicts to felony cruelty to children charges in Counts 5, 10, and 12.[7] The jury completely exonerated appellants of only one offense, the false imprisonment charge in Count 7 (which reiterated the "wooden box" confinement alleged in the Count 2 felony murder/cruelty to children charge), and found appellants guilty of lesser included offenses only as to the malice murder count and the Count 14 cruelty charge (by delaying medical treatment), which is more a comment on the weakness of the State's evidence to support those charges than the lack of any prejudice resulting from the prosecutor's birthday cake stunt.
Moreover, unlike the situation in Davis v. State, 285 Ga. 343(2), 676 S.E.2d 215 (2009), where the prosecutor dimmed the lights and called for a moment of silence while spotlighting photos of the victims admitted into evidence, no instruction was given here by the trial court to "cure" the prejudice. Notwithstanding the prosecutor's behavior, the jury was never charged that "they could only consider the evidence and the law as charged, and that sympathy for the victim... should play no role in their verdict. [Cit.]" Id. at 344-345(3), 676 S.E.2d 215.[8]
The prosecutor's behavior cannot be considered in the same light as some incidental statement or minor aberration made in the course of her closing argument. It was an unprofessional tactic undertaken for the purpose of ensuring that the State obtain a conviction. It is difficult if not impossible to imagine that the minds of the jurors would not have been influenced by the spectacle they observed. I would find that prejudice to appellants was so highly probable as a result of the prosecutor's unprofessional conduct that the majority is not justified in assuming its non-existence.
4. "From beginning to end, judicial proceedings conducted for the purpose of deciding whether a defendant shall [be sentenced to life in prison for murder] must be conducted with dignity and respect." Wellons v. Hall, ___ U.S. ___, 130 S.Ct. 727, 175 L.Ed.2d 684 (2010) (vacating judgment to reconsider evidentiary effect of gag gift given to judge and bailiff by jurors). While that case involved the death penalty, I would apply its standard to this case as well. But the behavior at issue here was no juror-initiated tasteless gag gift. It was an assistant district attorney  an officer of the court and a representative of the State of Georgia  who debased the dignity and respect of these criminal proceedings. Rather than "adher[ing] to the highest standards of professionalism and proper courtroom decorum [cits.]," Gissendaner v. State, 272 Ga. 704, 713(10), 532 S.E.2d 677 (2000), this prosecutor embarrassed every member of our profession with her behavior. The uncontroverted evidence of the events orchestrated by the prosecutor and performed in front of the jury with the tacit permission of the trial court establishes conclusively that the prosecutor did not concern herself with appellants' right to a fair trial. She cared only to win at any cost without regard to how unfair, how *642 undignified, how disrespectful her actions were.
We cannot lose sight of the fact that the legitimacy of our criminal justice system is undermined when we allow proceedings to be conducted in such a manner that they are rightfully perceived to be unfair. As critically important as the constitutional rights of criminal defendants are, those rights are not the only matters that must concern us. We do a disservice to victims, witnesses, jurors, the bench and bar, and the people of the State of Georgia in general when we do not uphold the dignity and integrity of our criminal justice proceedings. Prosecutorial misconduct of this nature is never harmless because, regardless of the particular verdict rendered, the misconduct damages the perception of fairness of trials that is essential to the effectiveness of the system itself. See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (Brennan, J., concurring).
Our courtrooms are not theaters; the participants in a criminal trial are not actors in reality television programs. It is not enough to "frown on" behavior that undermines the very foundation of the criminal proceedings. We have to stop it. And the only effective means of stopping it is to punish this behavior in the strongest possible manner. The only thing that gets attention is reversal.[9] See, e.g., Braithwaite v. State, 275 Ga. 884(2)(b), 572 S.E.2d 612 (2002), which demonstrates the continued use of "golden rule" arguments by prosecutors despite this Court's unequivocal condemnation of their use.
For these reasons I would reverse these convictions based on the State's deliberate behavior that deprived appellants of their fundamental right to a fair trial.[10]
I am authorized to state that Justice BENHAM joins in this dissent.
NOTES
[1] On June 15, 2006, the Smiths were indicted for malice murder, three counts of felony murder (with cruelty to children, aggravated assault, and false imprisonment as the underlying felonies), five counts of first degree cruelty to children, three counts of aggravated assault, and two counts of false imprisonment. Following a February 5-14, 2007 jury trial, both of the defendants were found guilty of involuntary manslaughter (as a lesser included offense of malice murder), one count of felony murder (cruelty to children), four counts of cruelty to children, all three counts of aggravated assault, one count of false imprisonment, and reckless conduct (as a lesser included offense of the remaining false imprisonment count). On March 27, 2007, the trial court sentenced the Smiths to life imprisonment for felony murder; twenty consecutive years for cruelty to children (striking Josef with a glue stick); ten years for cruelty to children (confining Josef to a small room) and false imprisonment (confining Josef to a small room), with these sentences to run concurrent with each other and consecutive to the felony murder and cruelty to children (striking with a glue stick) counts; and twelve months for reckless conduct, to run concurrent with the felony murder and cruelty to children (striking with a glue stick) counts. The involuntary manslaughter, cruelty to children (striking Josef in the head and confining him in a box), and aggravated assault (using unknown object to strike Josef in the head) counts were merged into the felony murder count for sentencing purposes; and the remaining aggravated assault charges (striking with a glue stick and unknown objects) and cruelty to children charge (striking with unknown objects) were merged into the cruelty to children charge upon which the Smiths were sentenced (striking with a glue stick) for sentencing purposes. The Smiths' timely appeals were docketed in this Court for the April 2010 Term, and their cases were orally argued on July 6, 2010.
[2] We also note that there is no allegation that Sonya's own trial counsel did not properly advise her regarding her right to testify.
[3] I do not address the majority's resolution of the trial court's exclusion of the Court TV DVD because I find that the testimony of the witnesses at the hearing on appellants' motion for new trial is adequate for the Court's consideration of this point of error. See Wright v. Texas, 178 S.W.3d 905, 917 (Tex.App.2005).
[4] Although case law reflects that other prosecutors have dimmed the courtroom lights in closing argument, see Davis v. State, 285 Ga. 343(2), 676 S.E.2d 215 (2009), they did so to highlight evidence properly admitted in the case.
[5] Although it seriously concerns me, I do not address the possibility that, by introducing the birthday cake, the prosecutor was deliberately provoking an intolerant attitude in the jury toward the religious beliefs practiced by appellants, particularly in regard to their strict nutritional eating habits. But I question the legal consequences had this birthday stunt been used in a case involving defendants who, e.g., were members of Jehovah's Witness, a religious denomination with beliefs against observing birthdays. See generally Roy, The Establishment Clause and the Concept of Inclusion, 83 Ore. L.Rev. 1, 39 (2004); Waites v. Waites, 567 S.W.2d 326 (Mo.1978).
[6] I am giving the prosecutor the benefit of the doubt by concluding that her motive for pulling this stunt was simply to evoke sympathy for the victim in an unprofessional attempt to obtain guilty verdicts at any cost, as this motive is less offensive than the other possible motive raised by this case, i.e., that she was deliberately pandering to the television audience observing the proceedings on Court TV. See defense counsel's testimony at the hearing on appellants' motion for new trial ("I understand the cameras were rolling and everybody wants to be Nancy Grace's friend").
[7] Of course, the jury's verdict could also be explained by the reasonable possibility that it concluded, with only one victim, that appellants should not be found guilty of more than one murder charge.
[8] The transcript reveals that no charge on this issue was given to the jury in the pre-trial instructions.
[9] Even reversal will not work to alter the behavior of certain professionally-challenged prosecutors aiming for a career elsewhere, such as on television.
[10] I address the error committed by the trial court in its charge on involuntary manslaughter because the issue may occur on retrial. The jury was charged that it could find appellants guilty of involuntary manslaughter based on either reckless conduct or battery. As in Drake v. State, 288 Ga. 131, 702 S.E.2d 161 (2010), the verdict form did not enable the jury to specify which misdemeanor served as the basis for the guilty verdict the jury returned on involuntary manslaughter as a lesser included offense of malice murder, creating the potential for conflict when the jury then returned a guilty verdict on felony murder based on cruelty to children. Unlike Drake, however, the jury here was not properly instructed. In its charge to the jury about criminal intent, the trial court instructed the jury that "intent is an essential element of any crime" (emphasis supplied) but the trial court never defined or otherwise instructed the jury on criminal negligence. The jury was instructed that criminal intent "may be inferred from acts and conduct, or it may be ... inferred when it is the natural and necessary consequence of the act" but received no information from the trial court that would have enabled the jury to understand that persons who commit reckless conduct by "consciously disregarding a substantial and unjustifiable risk [of] caus[ing] harm or endanger[ing] the safety of the other person," as charged, are not acting with criminal intent that may be inferred from their acts but were instead acting with criminal negligence. While the trial court in Drake expressly alerted the jury to the fact that reckless conduct was not a crime involving criminal intent, the trial court here left the jury utterly clueless. But for the fact that the victim here sustained several injuries, see Jackson v. State, 276 Ga. 408, 411(c), 577 S.E.2d 570 (2003), I would not be able to agree with the majority that no mutually exclusive verdict was returned in this case.