[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12877
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cv-03808-ELR


SONYA Y. SMITH,

Petitioner-Appellant,

versus

PULASKI SP WARDEN,

Respondent-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 27, 2020)

Before WILSON, WILLIAM PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Sonya Smith is a Georgia prisoner serving a life sentence plus 30 years for involuntary manslaughter, felony murder, cruelty to children, aggravated assault, false imprisonment, and reckless conduct in connection with the death of Smith's eight-year-old son, Josef.  Smith was tried alongside her husband, Joseph, who was represented by separate counsel.  Smith appeals the district court's denial of her 28 U.S.C. § 2254 petition for writ of habeas corpus, which raised two claims: (1) her trial counsel's failure to object to the state prosecutor's conduct during closing arguments violated her Sixth Amendment right to effective assistance of counsel; and (2) the state prosecutor's conduct violated her Fourteenth Amendment due process right to a fair trial.

After review,[1] and for the reasons explained below, we affirm the district court's denial of Smith's § 2254 petition.

## I.  BACKGROUND

Although we assume the parties are already familiar with the facts of this case, we briefly recount some salient points relevant to our analysis.

---

[1] When reviewing the district court's denial of a § 2254 petition, we review questions of law and mixed questions of law and fact, including ineffective-assistance-of-counsel claims, *de novo*, and review findings of fact for clear error.  *Pardo v. Sec'y, Fla. Dep't of Corr.*, 587 F.3d 1093, 1097–98 (11th Cir. 2009).

### A. Indictment and Trial in State Court

In 2006, a state court grand jury indicted Smith and her husband, Joseph, on charges of malice murder (Count 1), three counts of felony murder (Counts 2, 3, and 4), five counts of cruelty to children in the first degree (Counts 5, 8, 10, 12, and 14), three counts of aggravated assault (Counts 6, 9, and 11), and two counts of false imprisonment (Counts 7 and 13). Smith and Joseph pled guilty to all counts.

Over the course of an eight-day trial, the jury heard testimony from multiple witnesses, including three Cobb County, Georgia firemen who responded to the Smiths' home on the date of Josef's death; five Cobb County police officers; Josef's former babysitter; Josef's brother, Mikel; and several medical experts. Collectively, that testimony showed that Smith and her husband "routinely disciplined their son . . . by beating him with glue sticks, belts, and heated coat hangers; locking him in confined spaces for extended periods of time; and tying his hands with rope." *Smith v. State*, 703 S.E.2d 629, 633 (Ga. 2010). It further showed that, on the day of Josef's death, Smith beat Josef; forced him into a wooden box, beating him about the head as she did so; and tied the box shut with a cord. *Id.* Testimony from the medical experts established Josef's death resulted from some combination of the physical abuse he suffered and asphyxiation. *Id.*

3

After both the state and defense had rested, the case proceeded to closing arguments. As relevant here, at the end of her rebuttal, the state prosecutor lit candles on a birthday cake and stated the following:

> I was thinking about something the other day. I was thinking about birthdays. Happy birthday to you. Happy birthday to you. Happy birthday, dear Josef. Happy birthday to you. There are eight candles on that cake. But you know what's not on there? One more candle for his 9th birthday, because he didn't get to see that. You may think that's harsh, but it's true. And it was at the hands of those people.

Neither Smith's counsel nor her husband's counsel objected, and the district court did not intervene on its own or issue a curative instruction.

Following deliberations, the jury found Smith and her husband guilty of one of the counts of felony murder (Count 2), four counts of cruelty to children (Counts 5, 8, 10, and 12), all three counts of aggravated assault (Counts 6, 9, and 11), and one count of false imprisonment (Count 13).[2] The jury also found Smith and her husband guilty of the lesser included offense of involuntary manslaughter as to the charge of malice murder in Count 1, and the lesser included offense of reckless conduct as to the charge of cruelty to children in Count 14. Smith and Joseph were acquitted of two counts of felony murder (Counts 3 and 4), and one count of false

---

[2] The felony murder count for which Smith was convicted (Count 2) alleged that Smith caused Josef's death "while in the commission of a felony, to wit: Cruelty to Children in the First Degree."

4

imprisonment (Count 7).  The state trial court imposed a sentence of life plus 30 years for both Smith and her husband.

### B.  Motion for New Trial

After retaining new counsel, Smith filed an amended motion for a new trial, raising several claims, including three related to the prosecutor's actions during closing arguments: (1) trial counsel rendered ineffective assistance when he failed to object to the prosecutor's conduct, (2) the prosecutor inflamed the jury and prejudiced Smith; and (3) the trial court erred in failing to stop the prosecutor. During a subsequent hearing, Smith's trial counsel offered the following explanation for his failure to object:  "[S]ometimes you can offend someone with that so we didn't want to go out of our way to offend anyone on the jury or act like we were trying to disrupt her argument.  Also, it was a bit of a surprise and so we didn't do anything about it."  He went on to agree that, in general, an attorney "might not object for the purpose of not calling more attention to something."

After the hearing, the state trial court denied Smith's amended motion for a new trial, concluding Smith's counsel had not performed deficiently.  As to Smith's other claims regarding the prosecutor's conduct, the state trial court concluded Smith had waived them by failing to object contemporaneously at trial.

5

## C. Direct Appeal

In her direct appeal to the Georgia Supreme Court (which has exclusive jurisdiction over appeals from murder convictions), Smith raised three claims related to the prosecutor's conduct during closing: (1) the prosecutor prejudiced Smith through her conduct; (2) the trial court erred in allowing the prosecutor to prejudice her; and (3) trial counsel was ineffective for failing to object to the prosecutor's conduct.  Notably, Smith did not couch either her claim of prosecutorial misconduct or her claim of trial court error in terms of her Fourteenth Amendment right to due process, though she did argue "[t]he prejudicial atmosphere made it impossible for [her] to receive a fair trial."

The Georgia Supreme Court consolidated Smith's appeal with her husband's appeal and issued a single opinion affirming the convictions of both defendants. *See Smith*, 703 S.E.2d at 632–33.  To start, the Georgia Supreme Court concluded Smith had waived her claims of prosecutorial misconduct and trial court error arising out of the prosecutor's closing by failing to object at trial.  *Id.* at 633.  As to her ineffective-assistance claim, the Georgia Supreme Court concluded Smith's counsel had not performed inadequately, stating as follows:

> Counsel made a strategic decision not to object to the "Happy Birthday" song during the State's closing argument.  Specifically, he preferred to remain silent during the argument rather than run the risk of offending anyone on the jury by giving the impression that he was simply trying to disrupt the prosecutor's argument. . . .  [W]hile this Court frowns upon the prosecutor's antics and finds them to be highly inappropriate,

6

counsel's decision to remain silent was reasonable, considering the fact that the prosecutor's argument was so "preposterous" and "over the top" that it may have worked to the benefit of the defense even absent an objection. Indeed, it cannot be said that the jury may not have been alienated by the prosecutor's theatrical stunt during its closing argument, as the jury found [Smith] not guilty on several of the charges against her[.]

*Id.* at 636. Smith subsequently sought reconsideration, which the Georgia Supreme Court denied without comment.

### D. State Habeas Proceedings

Following her direct appeal, Smith filed a counseled application for writ of habeas corpus in state court. That petition raised several claims, including that her "due process rights and [her] Sixth Amendment right to effective legal counsel were denied by the prosecutor's intentional, outrageous appeal to the jury's emotions and sympathies" during closing. In resolving this claim, the state habeas court deferred to the Georgia Supreme Court. According to the state habeas court, the Georgia Supreme Court considered and decided the issue when it held that Smith's "failure to object to the prosecutor's closing argument waived review of the issue on appeal" and that "trial counsel was not ineffective in failing to object during closing argument."

The Georgia Supreme Court later denied Smith's application for a certificate of probable cause. Smith then initiated the instant § 2254 proceeding, raising several claims, including the ineffective assistance and due process claims

7

discussed above.  After denying Smith's petition, the district court granted a

certificate of appealability as to those two claims.[3]

## II.  DISCUSSION

### A.  *Ineffective Assistance of Counsel*

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides

that, after a state court has adjudicated a claim on the merits, a federal court may

grant habeas relief only if the state court's decision was (1) contrary to, or involved

an unreasonable application of, clearly established federal law, as determined by

the Supreme Court of the United States, or (2) based on an unreasonable

determination of the facts in light of the evidence presented to the state court.

28 U.S.C. § 2254(d).  "To justify federal habeas relief, the state court's decision

must be so lacking in justification that there was an error . . . beyond any

possibility for fairminded disagreement."  *Nance v. Warden, Ga. Diagnostic*

*Prison*, 922 F.3d 1298, 1301 (11th Cir. 2019) (quotation marks omitted).

To succeed on an ineffective-assistance-of-counsel claim, a movant must

show that (1) her attorney's conduct was deficient, and (2) the deficient conduct

---

[3] Smith's husband, Joseph, also filed a § 2254 petition, raising substantially similar ineffective assistance and due process claims related to the prosecutor's conduct during her closing argument.  Another panel of this Court recently affirmed the denial of Joseph's § 2254 petition, holding that the Georgia Supreme Court's conclusion—that Joseph's (separate) counsel was not ineffective for failing to object to the prosecutor's conduct—was not unreasonable, and that Joseph had procedurally defaulted his claim that he was deprived of his right to due process. *Smith v. Warden*, No. 18-13801, 2020 WL 615034 (11th Cir. Feb. 10, 2020).

prejudiced her defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  We "review counsel's actions in a highly deferential manner" and apply "a strong presumption . . . of reasonable professional assistance."  *Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011) (quotation marks omitted).  To overcome this presumption, a petitioner must show that "no competent counsel would have taken the action that [her] counsel did take."  *Id.* (quotation marks omitted).

Moreover, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Downs v. Sec'y, Fla. Dep't of Corr.*, 738 F.3d 240, 258 (11th Cir. 2013) (quotation marks omitted) (alterations in original).  "Where the highly deferential standards mandated by *Strickland* and AEDPA both apply, they combine to produce a doubly deferential form of review that asks only whether there is any reasonable argument that counsel satisfied *Strickland*['s] deferential standard."  *Id.* (quotation marks omitted).

Applying these standards here, we conclude the Georgia Supreme Court's conclusion—that Smith's counsel was not ineffective for failing to object to the prosecutor's conduct during closing—was not unreasonable.  In its opinion affirming Smith's convictions and concluding Smith's counsel had not performed inadequately, the Georgia Supreme Court noted that Smith's counsel "preferred to remain silent during the argument rather than run the risk of offending anyone on the jury by giving the impression that he was simply trying to disrupt the

9

prosecutor's argument."   The Georgia Supreme Court found this decision reasonable, especially "considering the fact that the prosecutor's argument was so 'preposterous' and 'over the top' that it may have worked to the benefit of the defense even absent an objection." *Smith*, 703 S.E.2d at 636.

We do not find this to be an unreasonable application of *Strickland*.  The record unquestionably shows that trial counsel's decision not to object to the prosecutor's actions during closing arguments was a strategic one.  As the Georgia Supreme Court noted, Smith's counsel, by his own account, chose not to object because he worried doing so might alienate or "offend[]" the jury if it looked as though he were "trying to disrupt the prosecutor's argument." *Id.* at 636.

Smith questions the wisdom of this strategic decision, but her arguments fail to overcome the considerable deference we owe, both to trial counsel's strategic decisions and to the Georgia Supreme Court's resolution of the claim.  *See Strickland*, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (quotation marks omitted)); *Downs*, 738 F.3d at 258.

Smith argues we ought not defer to the Georgia Supreme Court's conclusions concerning her counsel's performance because those conclusions were based on an unreasonable determination of the facts in light of the record.  She points to the Georgia Supreme Court's statement that her counsel's decision not to

10

object was reasonable "considering the fact that the prosecutor's argument was so 'preposterous' and 'over the top' that it may have worked to the benefit of the defense," arguing her counsel never claimed to base his decision on an expectation that the jury would be turned off by the prosecutor's outrageous conduct.[4]  *See Smith*, 703 S.E.2d at 636.

Considering the Georgia Supreme Court made the above statement only after accurately identifying Smith's counsel's purported reason for declining to object (the risk of offending the jury by interrupting the prosecutor) it is hardly clear that the Georgia Supreme Court based its *Strickland* analysis on any faulty findings of fact regarding counsel's strategic decision not to object.  *See id.* Indeed, although the Georgia Supreme Court referenced the reasonableness of counsel's decision, it immediately went on to note that the jury in fact acquitted Smith of some of the more serious charges, *see id.*, a line of reasoning that invokes *Strickland*'s prejudice prong, as it suggests the trial's outcome likely was not adversely affected by the prosecutor's conduct during closing, *see Strickland*, 466 U.S. at 694 (noting that, to establish prejudice under *Strickland*, a petitioner must

---

[4] Counsel for Smith's husband did, however, claim to base his decision not to object on such a calculus, testifying he did not object because he did not want to call any more attention to the stunt as it was "so absurd," and he thought "it would turn the jurors off."  *Smith*, 703 S.E.2d at 637.  The Georgia Supreme Court issued a single opinion addressing the arguments of both defendants, though it addressed their claims separately.

show that, but for her counsel's deficient performance, "there is a reasonable probability that . . . the result of the proceeding would have been different").

In any case, even assuming we found the Georgia Supreme Court's *Strickland* analysis was based on an "unreasonable determination of the facts in light of the evidence presented,"  28 U.S.C. § 2254(d)(2), this would not necessarily entitle Smith to habeas relief.  Instead, it would simply mean we would review her ineffective-assistance claim *de novo*—that is, without according deference under AEDPA to the Georgia Supreme Court's resolution of the claim. *See Cooper v. Sec'y, Dep't of Corr.*, 646 F.3d 1328, 1352–53 (11th Cir. 2011).

But even were we to review Smith's ineffective-assistance claim de novo, we would nonetheless affirm on the ground that Smith failed to demonstrate prejudice resulting from her counsel's failure to object.  *See Strickland*, 466 U.S. at 694.  First, although the trial court did not issue a specific curative instruction, it did instruct the jury that closing arguments do not constitute evidence, and we presume a jury will follow the instructions given to it.  *See United States v. Annamalai*, 939 F.3d 1216, 1224 (11th Cir. 2019).  Second, as the Georgia Supreme Court noted, the record suggests the jury was not taken in by the prosecutor's stunt, as Smith was acquitted of some of the more serious charges, including malice murder.  *See Smith*, 703 S.E.2d at 636.

12

Third, and most importantly, the record shows the state presented overwhelming evidence from which the jury could have found beyond a reasonable doubt that Smith committed the crimes for which she was convicted. As discussed above, the jury was presented with ample testimony showing that Smith (and her husband) routinely beat Josef and that, on the day of Josef's death, Smith beat Josef, forced him into a wooden box, and tied the box shut with a cord. That testimony, combined with the testimony from medical experts concerning Josef's cause of death, constituted powerful evidence that Smith was guilty of all the counts of conviction—involuntary manslaughter, felony murder, cruelty to children, aggravated assault, false imprisonment, and reckless conduct. In light of such powerful evidence, trial counsel's failure to object to the prosecutor's inappropriate conduct during closing arguments does not undermine our confidence in Smith's convictions, and she cannot satisfy *Strickland*'s second prong. *See Strickland*, 466 U.S. at 694.

### B. Due Process Violation

Before addressing the substance of Smith's due process claim, we must first determine the applicable standard.[5] Smith insists she is entitled to relief unless we

---

[5] There is also an issue here concerning whether Smith properly exhausted her due process claim in state court. As discussed above, on direct appeal, Smith raised two claims of error (in addition to her ineffective-assistance claim) related to the prosecutor's closing argument: (1) prosecutorial misconduct; and (2) trial court error, which the Georgia Supreme Court concluded were waived. *Smith*, 703 S.E.2d at 633. As the state concedes, Smith raised these claims on direct appeal solely in terms of state law and did not argue the prosecutor's

13

determine any error associated with the prosecutor's conduct was "harmless beyond a reasonable doubt," *Chapman v. California*, 386 U.S. 18, 24 (1967), while the state argues Smith is not entitled to relief unless she shows the constitutional error "had a substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

In *Chapman*, a direct appeal case, the Supreme Court held that, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24. However, the Court held in *Brecht* that the *Chapman* harmless-error standard is not applicable to habeas cases. 507 U.S. at 623. Instead, the Court held that the standard for determining whether habeas relief must be granted is whether the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quotation marks omitted); *see also Fry v. Pliler*, 551 U.S. 112, 121–22 (2007) ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*,

---

conduct during closing deprived her of due process under the Fourteenth Amendment. Notwithstanding this, when Smith raised a federal due process claim in her state habeas proceeding, the state habeas court mistakenly found Smith's due process claim was decided adversely on direct appeal and could not be relitigated. Thus, while it may be the case that Smith's due process claim is, practically speaking, unexhausted, we can neither say she wholly failed to raise it in state court, nor point to any state procedural ruling to which we can fairly defer. *See Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999). Accordingly, we will consider the merits of Smith's due process claim *de novo*.

14

whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*." (citations omitted)).

Because this is a habeas case, the law is clear that *Brecht* applies, and Smith is only entitled to relief if she can satisfy *Brecht*'s "substantial and injurious effect" standard.[6] "The standard for granting habeas relief under *Brecht* is extremely demanding," and "there must be more than a reasonable possibility that the error contributed to the conviction or sentence." *See Al-Amin v. Warden, Ga. Dep't of Corr.*, 932 F.3d 1291, 1299, 1303 (11th Cir. 2019).

In light of our above conclusion that trial counsel's failure to object to the prosecutor's conduct does undermine our confidence in Smith's convictions, we readily conclude that Smith cannot show "more than a reasonable possibility that [the prosecutor's conduct] contributed to [her] conviction." *See Al-Amin*, 932 F.3d at 1299. The incident therefore did not have a substantial and injurious effect or influence on the jury's verdicts, and Smith is not entitled to relief on her federal due process claim.

---

[6] Smith argues the *Brecht* should not apply here because, unlike in *Brecht* itself and *Fry*, her due process claim was never addressed by the state court under any standard. The only authority Smith cites for this proposition is the *Fry* Court's statement that it did not need to resolve whether "*Brecht* would apply even if a State *eliminated appellate review altogether*." *Fry*, 551 U.S. at 118–19. But this is not a case where Georgia has "eliminated appellate review." True, there was no appellate review of Smith's claim, but that is because, as noted above, Smith failed to raise a federal due process claim on direct appeal.

15

## III.  CONCLUSION

For the reasons discussed above, we affirm the district court's denial of Smith's § 2254 petition.

**AFFIRMED.**