[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14865
_____

D.C. Docket No. 1:12-cv-01688-AT

JAMIL ABDULLAH AL-AMIN,

Petitioner - Appellant,

versus

WARDEN,
COMMISSIONER, GEORGIA DEPARTMENT OF CORRECTIONS,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 31, 2019)

Before WILSON, JILL PRYOR, and TALLMAN,[*] Circuit Judges.

WILSON, Circuit Judge:

Jamil Abdullah Al-Amin appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Al-Amin argues that he is entitled to habeas relief under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), for the constitutional errors that occurred during his state trial. After careful review and with the benefit of oral argument, we affirm the district court's denial of habeas relief.

## I. Factual and Procedural Background

One evening in March 2000, Fulton County Deputies Ricky Kinchen and Aldranon English drove to Al-Amin's home to execute a valid arrest warrant.[1] Believing that Al-Amin was not home, the Deputies began to drive away. But the Deputies quickly turned around when they spotted a black Mercedes pull in front of Al-Amin's home. A man exited the vehicle, and the Deputies approached.

The Deputies asked the man to show his hands. The man began firing an automatic rifle and pistol at the officers. The Deputies, standing only a few feet away, returned fire. During the firefight, Deputy English's pepper spray canister exploded, temporarily blinding him. Deputies Kinchen and English were both shot

---

[*] The Honorable Richard C. Tallman, Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

[1] The warrant was issued after Al-Amin failed to appear for a traffic stop hearing. A Georgia trial court later ruled that the underlying traffic stop was unconstitutional.

during the exchange, and both believed they had shot the assailant in return.  As the man drove away in the black Mercedes, Deputy English radioed for help.  When help arrived, Deputy Kinchen described the assailant as a 6'4" black male wearing a long coat and a hat.  Both Deputies were transported to a local hospital, where Deputy Kinchen died from his injuries.

Officers who responded to the scene found a trail of blood leading from the crime scene to a vacant house and nearby woods.  The investigating officers believed the blood belonged to the fleeing assailant.  Neighbors also reported seeing a bleeding and injured man in the area that night.

The next day, while on morphine and other medication, Deputy English identified Al-Amin as the assailant after examining a photo lineup.  Soon after, law enforcement received a tip that Al-Amin was in White Hall, Alabama.  Federal and local law enforcement converged on White Hall, where, after an exchange of gunfire with a fleeing figure matching Al-Amin's description,[2] they eventually found Al-Amin unarmed and alone near a wooded area.  When officers arrested Al-Amin, he was wearing a bulletproof vest and had the keys to his black Mercedes.  Al-Amin's medical assessment revealed no signs that he was recently shot or wounded.

---

[2] Defense witnesses at trial testified that that they observed this portion of the manhunt for Al-Amin and that only law enforcement officials fired their weapons.  The officers testified they exchanged gunfire with the suspect as he fled through the woods.

3

After Al-Amin was arrested, law enforcement searched the surrounding area for other evidence. The officers located a 9mm pistol and ammunition. The next day, officers recovered a bag in the woods containing, among other things, ammunition, a cell phone, registration documents for a Mercedes indicating that Al-Amin was the owner, Al-Amin's passport, and a bank statement for Al-Amin. An assault rifle was also discovered nearby. Expert testimony at trial later established that these weapons were those used to shoot Deputies Kinchen and English. Experts matched, for example, the two 9mm bullets recovered during Deputy Kinchen's autopsy to the pistol found at White Hall. Experts also matched the shell casings found at the scene of the Fulton County shooting and in the area of Al-Amin's White Hall arrest to the .223-caliber Ruger rifle recovered in the White Hall woods.

Several days after apprehending Al-Amin, law enforcement discovered his Mercedes on his friend's private property. The car was riddled with bullet holes. Investigators later matched the bullets recovered from the Mercedes to the Deputies' service weapons.

Al-Amin was charged with malice murder and various other offenses in Georgia state court. During the jury trial, the state's case against Al-Amin included, among other things, the physical evidence from White Hall and in-court testimony by Deputy English identifying Al-Amin as the assailant.

4

Invoking his Fifth Amendment right against self-incrimination, Al-Amin did not testify. Al-Amin nonetheless presented a substantial defense. Approximately twenty witnesses testified on his behalf, including a neighbor and eyewitness to the shooting who testified that he was "absolutely positive" that Al-Amin was not the shooter. The defense showed that although the Deputies were confident that they had shot their assailant and there was a blood trail leading away from the scene, Al-Amin was not injured when he was apprehended. The defense also attempted to undermine Deputy English's identification of Al-Amin as the shooter. The defense emphasized that Deputy English was on morphine when he picked Al-Amin out of a lineup, and that Deputy English had consistently said the shooter had grey eyes, while Al-Amin has dark brown eyes.

At trial, the defense argued that law enforcement—namely, FBI Agent Ron Campbell—planted the weapons found in the White Hall woods, noting that law enforcement had never connected Al-Amin's DNA or fingerprints to the weapons.[3] Five years before Al-Amin's arrest, Agent Campbell was involved in a shooting of an allegedly unarmed Muslim black man. News reports suggested that law enforcement may have planted a weapon at the scene, but Agent Campbell was

---

[3] As part of its general defense theory, the defense argued that law enforcement targeted Al-Amin given his status as a controversial civil rights activist.

5

later cleared of any wrongdoing in that incident.  The trial court refused to let the defense cross-examine Agent Campbell about this past shooting.

During closing arguments, the prosecution told the jury, "I want to leave you with a few questions you should have for the defendant."  The prosecution then presented a visual aid to the jury titled, "QUESTIONS FOR THE DEFENDANT."  This visual aid included several written questions, including:

> Why would the FBI care enough to frame you?
> How did the murder weapons end up in White Hall?
> How did your Mercedes get to White Hall?
> How did your Mercedes get shot up?
> Why did you flee (without your family)?
> Where were you at 10PM on March 16, 2000?

The prosecution also posed these rhetorical questions aloud to the jury:

> Why would the FBI care enough to frame you?
>
> How did the murder weapons end up in White Hall? . . . Mr. Defendant, how did those murder weapons get there to White Hall?
>
> Next question. How did your Mercedes get to White Hall? . . .  Did you drive it there?
>
> More important, how did your Mercedes get shot up?

Defense counsel objected to both the chart and these questions and moved for a mistrial.  The court denied the motion but ruled that the prosecution should not focus on Al-Amin's choice not to testify or failure to present evidence.  The court offered to give a curative instruction, but the defense declined it, believing

such an instruction would compound the error. The prosecution then changed its visual aid to read "QUESTIONS FOR THE DEFENSE" and continued with its closing arguments. After the prosecution again asked a question directed specifically towards Al-Amin, the defense again moved for a mistrial. This time, the defense asked for a curative instruction given the impropriety of the comments and chart. The trial court chastised defense counsel in front of the jury, characterizing the defense's objections as "what you believe is an impropriety." The trial court overruled the defense's objections, but eventually gave an instruction:

> There has been an objection to some of [the prosecution's] closing which the Court has overruled. However, in order to clarify, I'm going to make very clear what I believe is appropriate.
>
> This is closing argument. Closing argument is not evidence. Attorneys may draw inferences and urge you to draw inferences from the evidence. It is proper for the attorneys to argue a failure to present certain evidence. However, you must keep in mind that a defendant in a criminal case is under no duty to present any evidence to prove innocence and is not required to take the stand and testify in the case.
>
> If a defendant elects not to testify, no inference hurtful, harmful or adverse to him shall be drawn by you, and no such fact shall be held against him.
>
> However, it is proper for one side or the other to comment on failure to present certain evidence, but not to comment on the failure of the Defendant to testify. And I'm clarifying this, that, as you know, the burden of proof always remains on the State to prove the guilt of a defendant as to any charge beyond a reasonable doubt.

7

The court also emphasized to the jury that it gave the instruction "just in an abundance of caution" and reiterated that the court had overruled Al-Amin's objections to the prosecutor's closing argument. The defense renewed its mistrial motion, arguing the instruction was insufficient. The motion was denied.

After the instruction, the prosecution continued with its closing argument, and asked the last question on the chart: "Where was the defendant at 10 p.m. on March 16?" The prosecution answered its own question: "He was standing outside his black Mercedes murdering Deputy Ricky Kinchen and trying to murder Deputy Aldranon English. That's the only evidence you have heard and will hear in this case as to where Jamil Abdullah Al-Amin was at 10 p.m. on March 16, 2000. That's it." The defense, interpreting this as another comment on Al-Amin's decision not to testify, again moved for a mistrial. The court denied the motion.[4] The jury convicted Al-Amin on all counts, and the court sentenced him to life without the possibility of parole.

On direct appeal, the Georgia Supreme Court affirmed Al-Amin's convictions. *Al-Amin v. State*, 278 Ga. 74 (2004). The court held that the trial court did not abuse its discretion in refusing to let Al-Amin cross-examine FBI

_____

[4] At the end of its rebuttal argument, the prosecution also told the jury: "You watched what happened in this courtroom, who wouldn't stand for you. Don't stand for him." This was a clear reference to Al-Amin's religiously based and court approved decision not to stand when the jury or judge entered the courtroom. The prosecutor's comments were patently improper.

8

Agent Campbell about prior allegations of planting a gun. *Id.* at 84. The court also held that the prosecution violated Al-Amin's Fifth Amendment right against self-incrimination during closing arguments. *Id.* at 84−86. The court found this error harmless, however, under *Chapman v. California*, 386 U.S. 18 (1967). The Supreme Court denied certiorari. *Al-Amin v. Georgia*, 543 U.S. 992 (2004).

Al-Amin then filed a state habeas petition, which was denied.[5] The Georgia Supreme Court also denied his Application for a Certificate of Probable Cause. Al-Amin then filed the instant federal habeas petition. The district court, like the Georgia Supreme Court, held that Al-Amin's Fifth Amendment rights were violated by the prosecutor's comments at closing arguments. The district court ultimately held, however, that Al-Amin was not entitled to relief under the stringent harmless error standard under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). The district court also denied Al-Amin's Confrontation Clause claim regarding Agent Campbell. The district court granted Al-Amin a certificate of appealability on all claims.

---

[5] In support of his state habeas petition, Al-Amin included an affidavit from a juror at his trial. The district court declined to consider this affidavit, as do we. Both federal law and Georgia law permit the introduction of jury testimony to impeach a verdict only in rare circumstances, none of which are present here. *See* O.C.G.A. § 24-6-606(b); Fed. R. Evid. 606(b)(2).

9

## II. Standard of Review

We review de novo the district court's denial of a 28 U.S.C. § 2254 petition. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010).  Because Al-Amin seeks collateral review, his appeal is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "establishes a highly deferential standard for reviewing state court judgments."  *Parker v. Sec'y, Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003).  Under AEDPA, a federal court may only grant habeas relief to a state petitioner if the state court's determination of a federal claim was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

When a defendant alleges a non-structural constitutional error at his trial, a state court reviewing a conviction on direct review analyzes the error under the standard established in *Chapman v. California*, 386 U.S. 18 (1967).  Under the *Chapman* standard, a constitutional violation is harmless if the government can show beyond a reasonable doubt that the error did not contribute to the verdict. *Chapman*, 386 U.S. at 24.

But on collateral review, we apply a more stringent harmless error standard. *See Brecht*, 507 U.S. at 623.  Under *Brecht*, we cannot grant habeas relief unless

10

we have "grave doubt" that the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (explaining the *Brecht* standard). To prevail, a petitioner must show "actual prejudice" from the constitutional error. *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1110 (11th Cir. 2012). "To show prejudice under *Brecht*, there must be more than a reasonable possibility that the error contributed to the conviction or sentence." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1313 (11th Cir. 2012) (quotation and citation omitted).

"Harmlessness under the *Brecht* standard is a question of law that we review de novo." *Id.* at 1307. Ultimately, "for a federal court to grant habeas relief, it must be true *both* that the state court's application of the *Chapman* harmless beyond a reasonable doubt standard was objectively unreasonable *and* that the error had a substantial and injurious effect or influence on the verdict." *Id.* at 1307–08; *see also Fry v. Pliler*, 551 U.S. 112, 119 (2007).

### III. Discussion

On appeal, Al-Amin argues that (1) the State violated his Fifth and Fourteenth Amendment rights when the prosecution engaged in a mock cross-examination of him after he invoked his right not to testify, and (2) the State violated his Sixth and Fourteenth Amendment rights by precluding him from cross-examining FBI Agent Campbell about alleged conduct in a past shooting. Al-

11

Amin argues that because both errors prejudiced him, he is entitled to relief under *Brecht*.

### A. Griffin *Error Analysis*

The Fifth Amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's choice not to testify. *See Griffin v. California*, 380 U.S. 609, 614−15 (1965); *see also United States v. Knowles*, 66 F.3d 1146, 1162 (11th Cir. 1995). A comment amounts to a constitutional violation where it was "manifestly intended to be a comment on the defendant's failure to testify" or it was "of such a character that a jury would naturally and necessarily take it to be a comment on" the defendant's silence. *Isaacs v. Head*, 300 F.3d 1232, 1270 (11th Cir. 2002) (quotation omitted). The prosecutor's "comment must be examined in context, in order to evaluate the prosecutor's motive and to discern the impact of the statement." *Knowles*, 66 F.3d at 1163. It is not erroneous, for example, for a prosecutor "to comment on the failure of the *defense*, as opposed to the *defendant*, to counter or explain the evidence." *United States v. Griggs*, 735 F.2d 1318, 1321 (11th Cir. 1984) (quotation omitted).

Every court to review this case—including the Supreme Court of Georgia—concluded that the prosecutor's comments during closing argument violated Al-Amin's Fifth Amendment right not to testify. The Georgia Supreme Court found that the prosecutor's comments and use of the chart amounted to a "mock cross-

examination" of a defendant who had invoked his right to remain silent. *See Al-Amin v. State*, 278 Ga. 74, 85 (2004). We agree. The prosecutor's closing argument highlighted the *defendant's* failure—not the defense's failure—to explain inculpatory evidence. The mock cross-examination was thus "of such a character that a jury would naturally and necessarily take it to be a comment on" the defendant's silence. *Isaacs*, 300 F.3d at 1270 (quotation omitted). This was constitutional error.

The primary issue, then, is not whether Al-Amin's Fifth Amendment rights were violated, but whether Al-Amin suffered actual prejudice from the error. *See Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) ("For reasons of finality, comity, and federalism, habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." (quotation omitted)). This requires "more than a reasonable probability that the error was harmful." *Id.* at 2198 (quotation omitted). Determining whether the error was harmful requires a close examination of the facts particular to the case. *See Mansfield*, 679 F.3d at 1313; *see also Trepal*, 684 F.3d at 1114 (explaining that, to determine "the effect on the verdict of a constitutional error, the Court must consider the error 'in relation to all else that happened' at trial" (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946))).

13

To determine whether a trial error was harmless, we typically consider the magnitude of the error, the effect of any curative instruction, and whether the prosecution otherwise presented overwhelming evidence of guilt to the jury. *See, e.g.*, *Hill v. Turpin*, 135 F.3d 1411, 1416−19 (11th Cir. 1998) (holding that a *Doyle* error[6] was not harmless when the prosecutor's statements were "repeated and deliberate," the trial court's curative instruction was ineffective, there were significant weaknesses in the state's case, and the defendant's credibility was critical to his case).  Other circuits have considered similar factors in the specific context of a *Griffin* error. *See Gongora v. Thaler*, 710 F.3d 267, 278 (5th Cir. 2013) (holding that a *Griffin* error was not harmless when there were repeated references to defendant's silence, the jury instructions to ignore the references were ineffective, and there was substantial evidence supporting acquittal).

We agree with Al-Amin, and with the district court, that the constitutional error in Al-Amin's case was substantial.  The prosecutor's unconstitutional comments were not isolated—they were instead repeated and central to his closing argument.

We also agree that the trial court's curative instruction was largely ineffective.  The trial court likely confused the jury by instructing that, although it

---

[6] A *Doyle* error refers to when the prosecution uses a defendant's post-*Miranda* silence to impeach a defendant's exculpatory testimony at trial.  *See Doyle v. Ohio*, 426 U.S. 610 (1976).

14

was not proper for the prosecution to comment "on the failure of the Defendant to testify," it was proper for the prosecution to comment on one side's "failure to present certain evidence."[7]  The court further undermined this instruction when it admonished the defense attorneys in front of the jury, emphasized that it was overruling the defense's objections to the prosecution's closing argument, and reiterated that it was giving the instruction "just in an abundance of caution."  The instruction thus did little to cure the error.

To determine whether the error prejudiced Al-Amin, we must consider it in light of everything that happened at trial.  *See Trepal*, 684 F.3d at 1114.  The district court ultimately denied habeas relief because it found that the evidence proving Al-Amin's guilt was otherwise "weighty" or "overwhelming."  We are unable to quarrel with the district court's determination.  The prosecution introduced substantial physical evidence recovered from White Hall linking Al-Amin to the crime.  The White Hall ballistics evidence included, for example, the same ammunition used to shoot the Deputies among Al-Amin's personal effects, the gun used to shoot the Deputies, and Al-Amin's Mercedes, found hidden in

---

[7] It is proper for a prosecutor to comment on the *defense's* failure to present evidence.  *See United States v. Griggs*, 735 F.2d 1318, 1321 (11th Cir. 1984).  But when we consider the trial court's instruction in light of the prosecutor's specific closing argument in Al-Amin's case, we find that the jury could have understood this instruction to mean that it could consider *Al-Amin's* failure—instead of the defense's failure—to counter or explain the evidence.  At a minimum, after multiple rounds of objections and arguments, the jury was likely confused about which comments it was permitted to consider.

White Hall and riddled with bullets matched to the Deputies' service weapons. The prosecution also presented evidence that the Mercedes drove away immediately after the shooting and that the car's registration and keys were found on Al-Amin when he was apprehended.  Finally, the prosecution presented Deputy English's eyewitness identification of Al-Amin as his shooter, which was consistent with his identification in the hours following the shooting.

But *Brecht* does not necessarily demand that we deny relief to a defendant even when there is overwhelming evidence against him, especially in the face of a substantial and uncured error.  *Brecht* adopted its harmless error standard from *Kotteakos v. United States*, which explained that the harmless error analysis does not focus solely on whether there was enough evidence to convict the defendant. *See Kotteakos*, 328 U.S. 750, 765 (1946) ("The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error.").  We instead must consider the specific context and circumstances of the trial to determine whether the error contributed to the verdict.

At Al-Amin's trial, the defense's general theory of the case was that law enforcement had targeted and framed Al-Amin for the murder of Deputy Kinchen. An important component of this theory was that the FBI had planted the murder weapons and other incriminating evidence at the scene at White Hall to connect Al-Amin to the murder.  The viability of this theory turned on (1) the credibility of

16

Deputy English's identification of Al-Amin as the assailant, and (2) the reliability of the physical evidence found in White Hall. Both issues can be—and likely were—resolved by weighing the credibility of competing eyewitness accounts and expert opinions on the reliability and chain of the physical evidence. We find it unlikely that the verdict was substantially affected by the prosecutor's attempt to highlight that Al-Amin had not explained his whereabouts or activity.

Al-Amin argues this case is similar to *Hill v. Turpin*, 135 F.3d 1411 (11th Cir. 1998), in which we granted habeas relief in light of an uncured *Doyle* error. In *Hill*, the State lacked concrete eyewitness testimony or strong physical evidence connecting the defendant to a murder. The defendant, who served as the defense's primary witness, testified that he was unarmed at the time of the murder. *Id.* at 1418. Throughout the trial, the prosecution made multiple references to the defendant's post-*Miranda* silence, each time attempting to impeach his story that he was unarmed. *Id.* at 1414−15. These errors were not cured, and when we considered both the "significant weaknesses in the state's case against [the defendant]" and "the importance of [the defendant's] credibility to his defense," we found that the error likely impacted the verdict and prejudiced the defendant. *Id.* at 1416−17. The defendant was therefore entitled to habeas relief.

Al-Amin's case is different. Given both the overwhelming evidence against Al-Amin—including physical evidence and eyewitness testimony—and the

17

difficulty in tracing the error to the verdict in his case, we conclude that Al-Amin did not suffer actual prejudice from the error.[8]  Al-Amin is thus not entitled to habeas relief.[9]

### B. Confrontation Clause Analysis

The Sixth Amendment, applicable to the States through the Fourteenth Amendment, guarantees a criminal defendant "the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  A court violates the Confrontation Clause when it inappropriately restricts the scope of cross-examination.  *See Delaware v. Fensterer*, 474 U.S. 15, 19 (1985); *Davis v. Alaska*, 415 U.S. 308, 316−18 (1974).  But "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

---

[8] Because Al-Amin does not satisfy the *Brecht* standard, we need not consider whether the Georgia Supreme Court unreasonably applied the *Chapman* harmless error standard in denying relief.  *See Mansfield*, 679 F.3d at 1308 (explaining that we may deny relief based solely on a determination that a federal constitutional error was harmless under the *Brecht* standard).

[9] *Brecht* also recognized the possibility that "in an unusual case, a deliberate and especially egregious error . . . or one that is combined with a pattern of prosecutorial misconduct" could warrant habeas relief even if the error did not substantially influence the jury's verdict.  *Brecht*, 507 U.S. at 638 n.9.  Al-Amin urges us to use *Brecht*'s exception for "deliberate and egregious" trial errors to grant habeas relief if we do not find that he suffered actual prejudice.  While we condemn the prosecutor's behavior in the instant case, we do not believe the error rises to the level contemplated by the Supreme Court as to merit reversal under *Brecht*'s exception.  We do not foreclose the possibility, however, that such a case may emerge.

18

If a defendant's Confrontation Clause rights are violated, the error should be analyzed on direct review under *Chapman*'s harmless beyond a reasonable doubt standard. *Id*. at 684. On federal collateral review, however, we review an alleged Confrontation Clause error under *Brecht*'s actual prejudice standard. *See Grossman v. McDonough*, 466 F.3d 1325, 1339 (11th Cir. 2006). Whether such an error was harmless may depend on, among other things, "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684.

Of course, we must first find an error before we can determine whether that error is harmless. *See Williams v. Singletary*, 114 F.3d 177, 180 (11th Cir. 1997). Al-Amin claims the State violated his Sixth and Fourteenth Amendment rights by precluding him from cross-examining FBI Agent Ron Campbell about Campbell's previous involvement in a shooting of an allegedly unarmed Muslim man in 1995. Newspaper accounts at the time alleged that law enforcement may have planted a gun to cover up the shooting, although Agent Campbell was later cleared of any wrongdoing. The defense intended to question Agent Campbell about the incident, but the trial court did permit this line of questioning, believing it would confuse the

19

jury.  Al-Amin argues that the error prejudiced him because this line of questioning was critical to his defense theory that Agent Campbell planted the murder weapons in White Hall, Alabama.

Like the district court, we discern no Confrontation Clause error.  Agent Campbell was investigated and cleared of any wrongdoing in the incident, and the newspaper accounts accusing law enforcement of wrongful conduct did not allege wrongdoing by Agent Campbell individually, but by law enforcement more generally.  Al-Amin's proposed questioning about the prior shooting was thus inherently speculative and likely to lead the jury astray.  Importantly, the trial court otherwise permitted cross-examination of Agent Campbell, and the prohibition on cross-examining Agent Campbell about these particular allegations did not prevent Al-Amin from making his general defense that the weapons were planted.  Although "the Confrontation Clause guarantees an *opportunity* for effective cross-examination," it does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Fensterer*, 474 U.S. at 20.  Given the trial court's significant discretion to limit the scope of cross-examination where appropriate, we find no constitutional error.

## IV. Conclusion

The standard for granting habeas relief under *Brecht* is extremely demanding.  And it provides no disincentive for a prosecutor to disregard the

boundaries of his constitutional obligation.  We regret that we cannot provide Mr. Al-Amin relief in the face of the prosecutorial misconduct that occurred at his trial. A prosecutor's duty in a criminal proceeding is not to secure a conviction by any means, but to ensure that justice will prevail.  *See Berger v. United States*, 295 U.S. 78, 88 (1935).  The prosecutor at Al-Amin's trial failed to live up to that duty.  Al-Amin is nevertheless not entitled to habeas relief unless the error had a substantial and injurious effect on the jury's verdict.  Because Al-Amin has not shown that the *Griffin* error prejudiced him, the error was not harmful under *Brecht v. Abrahamson*.  Nor has Al-Amin successfully shown a Confrontation Clause error. Accordingly, we affirm the district court's denial of habeas relief.

     **AFFIRMED.**