[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 22-14071

Non-Argument Calendar

————————————

ORLAND MCCORMACK,

Petitioner-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF
CORRECTIONS,

Respondent-Appellee.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cv-60555-BB

————————————

Before NEWSOM, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Orland McCormack, proceeding *pro se*, appeals the district court's dismissal of his 28 U.S.C. § 2254 petition as untimely, and alternatively as without merit. On appeal, he argues that his petition is both timely and meritorious. We need not decide whether McCormack's petition was timely because, even if it was, the petition fails on the merits. We therefore affirm the district court's denial of habeas relief.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In 2012, a Florida grand jury charged McCormack with kidnapping, aggravated assault with a firearm, and battery, following an incident between McCormack and his then-wife Samantha Baxter. He proceeded to trial in 2015, and the state presented the following evidence in its case-in-chief.

Samantha married McCormack in 2008 and, according to her, their marriage struggled from the start. She testified that McCormack was jealous, distrustful, and argumentative, often accusing her of being unfaithful and having an inappropriate relationship with her ex-boyfriend. On November 1, 2012, Samantha stated she fell asleep in her daughter Tiffany's room and, around midnight, McCormack called asking her where she was. Upon receiving this call, Samantha went to sleep in their shared home's guest room and did not return to the room she shared with

McCormack, because, she explained, they had stopped sleeping in the same room due to their tumultuous relationship.

Samantha stated that after she laid down in the guest room, McCormack entered the room and started accusing her of having an affair with her ex-boyfriend.  He then pulled out a gun and threatened to shoot her in the head, while loading the gun with live ammunition.  Samantha stated she leapt from the bed and grabbed McCormack in a "bear hug."  During the struggle, the gun discharged, but no one was hit by the bullet.

Samantha explained that McCormack ultimately overpowered her and again pointed the gun at her head, and then pulled her outside and placed her in his car.  McCormack, who was driving, told Samantha to direct him to her ex-boyfriend's home, and while the car was stopped, Samantha attempted to disarm McCormack by grabbing his testicles.  He responded by bending down and biting her hand, but he quickly apologized, turned the car around, and started driving back home.

After arriving back home, Samantha began cleaning up the mess created by the earlier fight, and she told McCormack to throw the gun into a nearby lake.  While he was gone, Samantha awakened Tiffany, who was still asleep in her room, and they ran to a neighbor's home, where they eventually called the police.

Next, Tiffany testified, reiterating that McCormack was a jealous person.  The officer who responded to Samantha's 911 call also testified, noting that he saw a fresh bite mark on Samantha's hand, and that she appeared to be in shock.  Finally, a state crime

scene technician testified that she had conducted a gunshot residue test on Samantha's hand which came back negative, meaning Samantha had not shot a gun at that time.

McCormack then testified in his own defense, denying that he was jealous of Samantha's ex-boyfriend. He stated that on the night of the incident, he caught Samantha counting money in the guest bedroom, and he believed it was illicit drug money that she had obtained from her ex-boyfriend. When he confronted Samantha, he stated that she pointed a firearm at his forehead and they began to fight, which caused him to bite her hand in an attempt to disarm her. McCormack claimed that during the fight, the gun discharged and he eventually retrieved the gun. He then threw the gun in a nearby lake and later witnessed Samantha leave the home carrying the duffel bag full of money. He said she returned home an hour later.

On cross-examination, the prosecutor began by asking McCormack: "You are in a very unique position in that you are the only person in the world that can testify in this case and can watch and see what every single person . . . who has testified has testified to, right?", to which McCormack responded, "Correct." The prosecutor then asked, "That makes you the only person in the world that would be able to tailor your testimony to fit what everybody else says, correct?", to which McCormack responded, "Correct." The prosecutor also confirmed that November 21, 2012, the date of a pretrial hearing, was the first time McCormack gave any official statement regarding the case, and McCormack agreed. The

prosecutor followed up by saying, "20 days after this happened," to which defense counsel objected on the ground that the question was an improper comment on McCormack's right to remain silent. The prosecutor responded that McCormack had chosen not to remain silent, and that he was merely confirming when McCormack made his statement.

Defense counsel then moved for a mistrial. The jury left the courtroom, and defense counsel argued that the prosecutor was making an improper argument to the jury about why McCormack did not make statements to the police for over 20 days. The prosecutor argued that his questioning would have only been improper if he had asked McCormack why he had not given a statement for 20 days. The trial court stated that it appeared the prosecutor was trying to discredit McCormack because he chose to remain silent. The prosecutor disagreed, stating that he was not trying to discredit McCormack, but was instead suggesting that McCormack had 20 days to "tailor a story" before he testified at the pretrial hearing, at which time he had "all of the information that the police had." He also argued that McCormack had opened himself up to that line of questioning based on his testimony at the pretrial hearing and that he was allowed to impeach McCormack based on his prior statements. The prosecutor further stated that his questioning was meant to establish a timeline of when McCormack made his statements and what information he had when he made the statements.

6                          Opinion of the Court                        22-14071

The trial court deferred ruling on the motion for a mistrial. The court then brought the jury back into the courtroom and gave the following instruction:

> Ladies and gentlemen of the jury, let me remind you of an instruction that I've already given you previously, that in every criminal proceeding a defendant has the absolute right to remain silent. At no time is it the duty of a defendant to prove his innocence. From the exercise of a defendant's right to remain silent, a jury is not permitted to draw any inference of guilt.

The prosecutor continued questioning McCormack, asking him if he had access to the police reports before he gave his statement, and McCormack confirmed he had such access. McCormack also confirmed that he "knew pretty much everything" that the state had presented to the jury at the time he gave his pretrial statements.

Ultimately, the jury found McCormack guilty on all counts. The trial court then denied the motion for mistrial, finding that: (1) McCormack opened the door to the prosecutor's questioning, without further elaboration; (2) the prosecutor's question was an invited response to that open door; (3) the prosecutor's question was ambiguous enough not to directly undermine McCormack's constitutional rights to remain silent; and (4) whatever prejudice the question caused was cured by the court's instruction to the jury. The trial court then sentenced McCormack to a 30-year total term of imprisonment.

McCormack directly appealed, arguing *inter alia,* that the trial court erred in denying his motion for mistrial based on the prosecutor's questioning around when he made his pretrial statement which infringed upon is constitutional right to remain silent. Florida's Fourth District Court of Appeals ("Fourth DCA") affirmed in part and reversed in part in a written opinion, affirming the conviction without discussion and remanding for resentencing on separate grounds. The state then moved for rehearing as to the sentencing issue, which the Fourth DCA granted, noting that the record had been incomplete on its initial review. The Fourth DCA therefore ultimately affirmed in all respects.

In October 2020, McCormack filed the instant *pro se* § 2254 petition, in which he raised nine grounds for relief. As relevant here, he asserted that the trial court erred in denying his motion for mistrial because the prosecutor impermissibly commented on his constitutional right to remain silent, and such comment infected the fundamental fairness of his trial.

In opposition, the state argued that McCormack's petition was untimely. It also argued that McCormack's challenge to the prosecution's questioning around his November 2021 statement was meritless.

The district court dismissed McCormack's § 2254 petition as untimely and did not review the underlying merits of his case. McCormack moved the district court to reconsider the dismissal, arguing his petition was timely because the Fourth DCA acted as the state court of last resort in these circumstances.

The district court granted McCormack's motion for reconsideration. It still concluded that McCormack's petition was untimely, but it noted that Florida precedent was unclear whether McCormack was required to petition the Florida Supreme Court for review. Thus, if McCormack's position was correct, his petition would be considered timely filed.

The district court then reviewed the merits of McCormack's petition and ruled against him on that front as well. The district court viewed the prosecutor's comments as focused on emphasizing that McCormack had an opportunity to tailor his version of events to rebut the state's theory of the evidence, and did not see them as an attack on McCormack's decision to remain silent. The district court also ruled that the trial court's instruction to the jury about the prosecution's statements sufficiently cured any prejudicial impact the remarks might have had to McCormack's defense. It additionally noted that the prosecutor's statements were not so prejudicial as to be uncurable.

For these reasons, the district court granted McCormack's motion for reconsideration, but denied his § 2254 petition. The district court then granted McCormack a certificate of appealability ("COA") on whether his petition was timely. On appeal, we initially remanded this case back to the district court to clearly identify the underlying constitutional issue upon which its procedural COA was based. On remand, the district court indicated that it had granted a COA on the timeliness issue, and that reasonable jurists could debate whether, as to McCormack's "right to remain silent"

argument, the prosecutor's statements violated his constitutional rights.

## II. STANDARDS OF REVIEW

When reviewing the district court's merits-based denial of a § 2254 petition, we review for clear error the district court's factual findings and its legal determinations *de novo*. *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 907 (11th Cir. 2009). When reviewing a § 2254 petition, a district court must afford substantial deference to the state court decision being challenged and may only grant relief if the state court's decision was contrary to or an unreasonable application of clearly established federal law or involved an unreasonable determination of the facts. *Id.*; *see also* 28 U.S.C. § 2254(d).

A state court "unreasonably applies clearly established federal law when it unreasonably applies the law of the Supreme Court to the facts of a case." *Owen*, 568 F.3d at 907. Clearly established federal law refers to the holdings of the Supreme Court at the time at which the state court reached its decision. *Id.*

In deciding whether a state court's decision involved an unreasonable application of federal law on review of a § 2254 petition, the district court must review the legal and factual reasons that the last state court to review the merits of the state prisoner's federal claims gave for rejecting them. *Wilson v. Sellers*, 584 U.S. 122, 125-26 (2018). For that reason, where the decision of the last state court to review the claims is unexplained, federal courts "should 'look through' the unexplained decision to the last related state-court

decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Id.*

## III. ANALYSIS

A prosecutor infringes upon a defendant's protection against self-incrimination, in violation of the Fifth Amendment, when the prosecutor directly comments on a defendant's exercise of his right to remain silent. *Griffin v. California*, 380 U.S. 609, 611-15 (1965). Additionally, a prosecutor violates a defendant's Fifth Amendment protection against compulsory self-incrimination when the prosecutor suggests to the jury that it can treat the defendant's silence as evidence of guilt. *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976).

Nevertheless, these Supreme Court directives cannot be read too broadly. *United States v. Robinson*, 485 U.S. 25, 31-32 (1988). A prosecutor's comment implicating a petitioner's right to remain silent does not violate the Constitution unless the comment "'manifestly intended to be a comment on the defendant's failure to testify', or it was 'of such a character that a jury would naturally and necessarily take it to be a comment on the defendant's silence.'" *Al-Amin v. Warden Ga. Dep't of Corr.*, 932 F.3d 1291, 1299 (11th Cir. 2019) (quoting *Isaacs v. Head*, 300 F.3d 1232, 1270 (11th Cir. 2002)). Thus, a prosecutor's comment implicating the defendant's right to remain silent must be analyzed in context to evaluate the prosecutor's motive and determine the impact of the statement. *Id.*; *see also Robinson*, 485 U.S. at 31-34.

Importantly, these types of Fifth Amendment errors are subject to harmless error review. *Al-Amin*, 932 F.3d at 1299-1300. As such, even if a petitioner can establish that his Fifth Amendment right to remain silent was violated by a prosecutor's comments, he is not entitled to relief if such error did not prejudice him. *Id.* at 1300; *see also Davis v. Ayala*, 576 U.S. 257, 267 (2015) ("[H]abeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." (internal quotation marks omitted)). Under harmless error review, habeas relief is only proper if this court has a "grave doubt" about whether a constitutional trial error had a "substantial and injurious effect" on the jury's verdict. *Davis*, 576 U.S. at 268 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). In determining whether a prosecutor's comments on a petitioner's silence actually prejudiced him, we look to "the magnitude of the error, the effect of any curative instruction, and whether the prosecution otherwise presented overwhelming evidence of guilt to the jury." *Al-Amin*, 932 F.3d at 1300.

On appeal, McCormack argues that the district court improperly dismissed his Fifth Amendment claim because the

prosecutor's comment on his silence violated his constitutional rights. We disagree.[1]

First, the state trial court did not unreasonably conclude that the prosecutor's statements were not made with the manifest intent to comment on McCormack's decision to remain silent. *Owen*, 568 F.3d at 907; *Al-Amin*, 932 F.3d at 1300; *Robinson*, 485 U.S. at 31-34. Our review of the record shows that, instead, the prosecutor's comments suggested that the timing of McCormack's pretrial testimony showed an effort on his part to tailor his testimony in a way to defeat the state's theory of the case. *Griffin*, 380 U.S. at 611-15; *Baxter*, 425 U.S. at 319. Because McCormack has not shown that the state court unreasonably applied federal law, he is not entitled to relief. 28 U.S.C. § 2254(d).

Further, even if McCormack had established that the prosecutor's statements violated the Fifth Amendment, he has not shown that the state trial court unreasonably concluded that he was not prejudiced as a result of any such violation. *Owen*, 568 F.3d at 907; *Al-Amin*, 932 F.3d at 1299-1300. As the district court found, the state trial court gave an appropriate curative instruction informing the jury not to use McCormack's decision to remain silent as evidence of guilt. The trial court also emphasized that McCormack

---

[1] As we noted above, we need not address McCormack's timeliness arguments, because, even if he is correct and his petition is timely, we may affirm on the merits. *See Fla. Wildlife Fed'n Inc. v. United States Army Corps of Eng'rs*, 859 F.3d 1306, 1316 ("We may affirm the district court's ruling on any basis the record supports.").

was not required to put forth any evidence of innocence. These curative steps were appropriate, and do not represent an unreasonable application of federal law. 28 U.S.C. § 2254(d). Additionally, the prosecution presented sufficient evidence of McCormack's guilt to the jury such that we do not have any "grave doubt" that the jury's decision was based upon any possible impermissible comments on the prosecutor's part. *Al-Amin*, 932 F.3d at 1300; *Davis*, 576 U.S. at 268. For these reasons, even if McCormack established that a constitutional error occurred, the error was harmless.

## IV. CONCLUSION

For the reasons set forth above, the district court's denial of habeas relief is affirmed.

**AFFIRMED.**